## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

......................................................................x

JOHN FLYNN, SR., LEONA FLYNN, JOHN FLYNN, JR., ELAINE FLYNN, JAMES FLYNN, FOX ROCK LLC, ANNA LIVIA LLC, THE BLOOMSDAY TRUST, MOUNTVILLE DEVELOPMENTS LIMITED, LAKEBRIDGE LIMITED, BENRAY LIMITED, TREFTON LIMITED, ARUBA PROPERTIES LIMITED, BLUECROWN LIMITED, KOMADY & MICHAEL O'REILY (TRADING AS BELGARD RETAIL PARK LIMITED), STONEWOOD DEVELOPMENTS, MALLIA PROPERTIES LIMITED, ISLAND ASSOCIATES LIMITED, BELLPARK DEVELOPMENTS LIMITED, EYRIN DEVELOPMENTS LIMITED, DR. JOSEPH SHEEHAN, and BLACKROCK MEDICAL CORPORATION,

13 CV 9035

Civ. No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs,

-against-

NATIONAL ASSET MANAGEMENT AGENCY, SEAN FITZPATRICK, TIARNAN O'MAHONEY, ARTHUR MICHAEL ROYAL AYNSLEY, KIERAN WALLACE, BYRNE WALLACE, EAMON RICHARDSON, BRENDAN MCDONAGH, MARK TRAYNOR, NIALL WHITE, BARRY O'BRIEN, MICHAEL HOEY, MICHAEL FOLEY, LAURA MULROONEY, AIDEEN O'REILLY, LAW OFFICES OF A&L GOODBODY and KPMG,

Defendants.

......................................................................x

RECEIVED DEC 20 2013 U.S.D.C. S.D.N.Y. CASHIERS

## PLAINTIFF'S ORIGINAL COMPLAINT – CIVIL RICO

Plaintiffs John Flynn, Sr., Leona Flynn, John Flynn, Jr., Elaine Flynn, James Flynn, Fox Rock LLC, Anna Livia LLC, The Bloomsday Trust, Mountville Developments Limited, Lakebridge Limited, Benray Limited, Trefon Limited, Aruba Properties Limited, Bluecrown Limited, Komady & Michael O'Reily (trading as Belgard Retail Park), Stonewood Developments, Mallia Properties Limited, Island Associates

1

Limited, Bellpark Developments Limited, Eyrin Developments Limited, Dr. Joseph Sheehan, and Blackrock Medical Corporation (collectively, "Plaintiffs"), by and through their undersigned counsel, Leonard Zack and Associates, file this Complaint **against** The National Asset Management Agency ("NAMA"), Sean Fitzpatrick, Tiarnan O'Mahoney, Arthur Michael Royal Aynsley, Kieran Wallace, Byrne Wallace, Eamon Richardson, Brendan McDonagh, Mark Traynor, Niall White, Barry O'Brien, Michael Hoey, Michael Foley, Laura Mulrooney, Aideen O'Reilly, Law Offices of A&L Goodbody, and KPMG (collectively, "Defendants"), averring as follows:

## PRELIMINARY STATEMENT

1.       This civil RICO action, brought pursuant to 18 U.S.C § 1861 *et seq.*, arises from a fifteen-year criminal enterprise and conspiracy carried out by (i) the Anglo Irish Bank Corporation Limited (the "Bank"); (ii) its successor, the Irish Bank Resolution Corporation ("IBRC"), which is controlled by the Irish Government, (iii) the Bank's principals and employees, and (iv) other related parties, for the purpose of defrauding the Bank's borrowers (plaintiffs herein) of millions of dollars by deliberately overcharging interest on their loans and then covering up the overcharges by way of threats, property seizures, obstructions of justice, and even a recent sham federal bankruptcy filing.

2.       Plaintiffs are entities and individuals who, beginning in or about 1994, borrowed in excess of $200 million from the Bank in more than eighty-four variable rate DIBOR/EURIBOR ("DIBOR") loan transactions.

3.       Plaintiffs used the borrowed funds to purchase and develop real estate nationally, in Ireland, and in the United Kingdom.  Most of the properties developed with these funds are highly valuable commercial office blocks.

4.     Plaintiffs discovered the Bank's systematic interest overcharges in 2010. Collectively, these overcharges exceed $12 million.

5.     Although the Bank's principals learned first-hand of these fraudulent overcharges, the Bank refused to rectify them.  Rather, the Bank conspired with the Irish Government and related parties to cover up this corrupt activity.

6.     As is detailed below, the conspiracy involved numerous RICO predicate acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), obstruction of justice and witness tampering (18 U.S.C. §§ 1503 and 1512), and bankruptcy fraud (18 U.S.C. § 157).

7.     Plaintiffs also bring claims for fraud, trespass to chattels, unjust enrichment, civil conspiracy, violation of New York Judiciary Law § 487, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and negligence.

## THE PARTIES

8.     Plaintiff John Flynn, Sr. is an individual residing at 300 Ridgeview Drive, Palm Beach, Florida 33480.

9.     Plaintiff Leona Flynn is an individual residing at 300 Ridgeview Drive, Palm Beach, Florida 33480.

10.     Plaintiff John Flynn, Jr. in an individual residing at 300 Ridgeview Drive, Palm Beach, Florida 33480.

11.     Plaintiff Elaine Flynn is an individual residing at 522 City Place South Tower, 550 Okeechobee Blvd., West Palm Beach, Florida 33401.

12.     Plaintiff James Flynn is an individual domiciled and permanently residing

in the Republic of Ireland.

13.     Plaintiff Fox Rock LLC is a Florida LLC with a registered address at 5100 PGA Blvd., Suite 501, Building #2-4A, Palm Beach Gardens, Florida 33418.

14.     Plaintiff Anna Livia LLC is a Florida LLC with a registered address at 5100 PGA Blvd., Suite 501, Building #2-4A, Palm Beach Gardens, Florida 33418.

15.     Plaintiff The Bloomsday Trust is a Florida Trust with a registered address at 777 South Flagler Drive, Suite 500 East, West Palm Beach, Florida 33401.

16.     The following Plaintiffs are entities that reside outside of the United States but are controlled by Plaintiffs Leona Flynn, John Flynn, Jr., Elaine Flynn, and James Flynn (the "Flynn Family") or are subject to personal guarantees given by the Flynn Family:

> Mountville Developments Limited, Lakebridge Limited, Benray Limited, Trefon Limited, Aruba Properties Limited, Bluecrown Limited, Komady & Michael O'Reily (trading as Belgard Retail Park), Stonewood Developments, Mallia Properties Limited, Island Associates Limited, Bellpark Developments Limited, Eyrin Developments Limited.

17.     Plaintiff Dr. Joseph Sheehan is an individual residing at 28 West 531 Roosevelt Road, Winfield, Illinois 60190.

18.     Plaintiff Blackrock Medical Corporation is an Illinois corporation with a registered address at 12931 Meed Ct., Palos Park, Illinois 60464.

19.     Defendant the National Asset Management Agency ("NAMA") is an Irish commercial enterprise with a registered address at The Treasury Building, Grand Canal Street, Dublin 2, Ireland.   Upon information and belief, NAMA engages in substantial business in the United States and holds loans secured by United States properties, including properties located in New York City.

20.     Upon information and belief, Defendant Sean Fitzpatrick was the Chairman and Chief Executive Officer of the Anglo Irish Bank Corporation Limited (the "Bank") until December 2008.  The Bank maintained a number of United States offices until September 2013, including an office at 222 E 41st Street #24, New York, New York 10017.

21.     Upon information and belief, Defendant Tiarnan O'Mahoney was the Chief Operating Officer of the Bank during the time of plaintiffs' loan transactions and he maintains a residence at Glenpines, Old Long Hill Road, Enniskerry, Co. Wicklow, Ireland.

22.     Upon information and belief, Defendant Arthur Michael Royal Aynsley was the CEO of the Bank, and then the Irish Bank Resolution Corporation ("IBRC"), until February 2013.

23.     Upon information and belief, defendants Kieran Wallace and Eamon Richardson are employees of KPMG who serve as the Special Liquidators of IBRC.

24.     Upon information and belief, Defendant KPMG is a global consulting and accounting firm that employs the Special Liquidators of IBRC.

25.     Defendant Byrne Wallace is a law firm of Irish solicitors who work for and with the Special Liquidators and which has an office at Ireland House, 17th Floor 345 Park Avenue, New York City 10154.

26.     Upon information and belief, Defendant Brendan McDonagh is the CEO of the National Asset Management Agency (NAMA).

27.     Upon information and belief, Defendant Mark Traynor is an Irish solicitor at A & L Goodbody, who works with the Special Liquidators.

28.     Upon Information and belief, defendants Niall White, Barry O'Brien, Michael Hoey, Michael Foley, Aideen O'Reilly and Laura Mulrooney are current or former NAMA employees.

29.     Defendant A&L Goodbody is an Irish law firm with offices at Suite 33D, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174.

## JURISDICTION AND VENUE

30.     Subject matter jurisdiction is proper pursuant to (i) 18 U.S.C § 1964; (ii) 28 U.S.C. § 1330 and (iii) 28 U.S.C. § 1332.

31.     Ireland has waived sovereign immunity under the 1950 U.S.-Ireland Friendship Treaty and/or the "commercial activity exception" per 28 U.S.C. § 1605(a)(2).

32.     The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

33.     Personal jurisdiction is proper pursuant to 28 U.S.C. § 1330(b) and 28 U.S.C. § 1608(a) because the Bank and other defendants have transacted business and engaged in activity within New York.

34.     Venue is proper pursuant to 18 U.S.C. § 65(a) and 28 U.S.C. § 1391 because defendants are subject to this district's personal jurisdiction and they conduct business and own assets herein.

## FACTS

### *The DIBOR-Based Loans*

35.     Beginning in or about 1994, plaintiffs collectively borrowed more than $200 million from the Anglo Irish Bank Corporation Limited (the Bank) in over eighty-four loan transactions.

6

36.     Defendants Sean Fitzpatrick ("Fitzpatrick") and Tiarnan O'Mahoney ("O'Mahoney") were directly involved in negotiating and making these loans, along with Bank staff in Chicago, Boston and New York.

37.     Many of these loans were transacted in the United States at the Bank's United States offices, either in New York, Chicago or Boston.

38.     All of these loans were based on the daily-fluctuating Dublin Interbank Offer Rate ("DIBOR") interest rate.

39.     O'Mahoney was responsible for establishing this interest rate for all of the Bank's borrowers, including the plaintiffs.

40.     Plaintiffs used these loans to purchase and develop real estate nationally, in Ireland, and in the United Kingdom.

41.     As to most of the loans at issue herein, the Bank demanded and received personal guarantees from its borrowers.

42.     When plaintiffs sought to engage in loan transactions with other banking institutions in Ireland and in the United States, the Bank threatened to demand repayment of all of the outstanding loans if plaintiffs were to transact with any other bank.  Thus, the Bank used its financial power over plaintiffs to prevent them from entering into loan transactions with other banks, in furtherance of its fraud against plaintiffs and as a fraudulent inducement for plaintiffs to continue to borrow from the Bank.

### *The Fraudulent Interest Overcharges*

43.     In 2010, plaintiffs discovered that the Bank had overcharged interest on their loans.   In October 2010, they retained BankCheck Ltd. ("BankCheck") to forensically analyse their accounts and those of third parties.

44.     BankCheck's report (*see* Exhibit A) revealed systematic interest overcharging perpetuated by the Bank's intentional manipulation of the daily DIBOR rate – a practice that had been on going for well over a decade.

45.     BankCheck determined that the Bank's interest overcharges against plaintiffs exceeded $12 million.

46.     As is detailed below, even after the Bank's principals learned from plaintiffs about these overcharges, they failed to rectify the situation.  Instead, the Bank conspired with the Irish Government to conceal its fraud.

### *The Bank Fails and the Irish Government Bails it Out*

47.     As of September 2008, the Bank was failing.  At that time, the Irish Government injected additional capital into the Bank and guaranteed all of its liabilities.

48.     By January 2009, the Irish Government became the sole shareholder of the Bank.

49.     Thereafter, the Bank began to liquidate its assets at steep discounts.  In 2010, the Bank (at the Irish Government's direction), sold €35 billion of loans – including the loans at issue herein – to the National Asset Management Agency ("NAMA"), a for-profit company created by the National Asset Management Agency Bill of 2009.  *See* Exhibit B.  NAMA is a special purpose vehicle owned by the Irish Government and three other Irish banks (which in turn are owned and controlled by the Irish Government).

50.     The Bank received only €13 billion in return, which reflected a 62% discount, thereby greatly reducing the assets available to pay its creditors – including the plaintiffs, who have a claim for interest overcharging.

51.    In addition, it is plaintiffs' information and belief that these loans were intentionally undervalued by defendant NAMA for the purpose of defrauding plaintiffs.

52.    These distressed sales ordered by the Irish Government compounded the Bank's troubles.  The Irish Government then passed special legislation, directed solely to the Bank, to eradicate much of the Bank's debt.  It did so regardless of the fact that this legislation would cause the Bank to violate its contractual obligations.

53.    In December 2010, the Irish Government proposed, and enacted within a matter of days, the Credit Institutions (Stabilisation) Act 2010, which gives the Irish Minister for Finance sweeping powers over the Bank.  Under this Act, the Minister for Finance may obtain ex parte "direction orders" from the High Court of Ireland requiring the Bank to take "any action," including selling its assets and liabilities.

54.    In 2011, the Irish Government bailed out the Bank by taking full control over it (*see* Exhibit C).  The Irish Government also changed the Bank's name to the Irish Bank Reconciliation Corporation ("IBRC") (*see* Exhibit D).

55.    Due to the Irish Government bailout, IBRC remained solvent.

56.    Nonetheless, on February 7, 2013, by way of emergency legislation, the Irish Government liquidated IBRC  (*see* Exhibit E).  This measure was inappropriate due to the Bank's solvency.  At that time, the Irish Government replaced the IBRC Board with members of the accountancy group KPMG.

57.    The Irish Government appointed two KPMG accountants, defendants Kieran Wallace ("Wallace") and Eamon Richardson ("Richardson"), to manage IBRC as Joint Special Liquidators (Wallace and Richardson are also hereafter referred to as the "Special Liquidators").

58.     The February 7, 2013 emergency legislation made the Irish Government IBRC's only secured creditor.   It eliminated the recourse of all other creditors, including plaintiffs, who – as Wallace admitted under oath – were overcharged interest.

### *The Bank Declines to Remedy the Overcharges*

59.     In or about 2010, BankCheck provided email notice of the Bank's overcharges to the National Treasury Management Agency ("NTMA") and NAMA. BankCheck estimated that the total overcharges approximated $1.6 billion.   (The plaintiffs herein contend that they have been overcharged more than $12 million.)

60.      NTMA never responded to this notice from BankCheck.

61.     Thereafter, plaintiff James Flynn met with NAMA employees Niall White ("White"), Barry O'Brien ("O'Brien"), and Michael Hoey ("Hoey") and notified them of the fraudulent overcharging.

62.     Unfortunately, neither NAMA, nor the Bank/IBRC agreed to remedy the overcharges.   Although the Bank did admit fault and remedy some overcharges (*see* Exhibit F), the amount issued was less than 2% of what was due, and the plaintiffs received no payments whatsoever.

63.     Upon information and belief, Michael Royal Aynsley ("Aynsley"), Brendan McDonogh ("McDonogh") and NAMA conspired with the Irish Government and the Irish Bank Regulator to cover up the fraudulent overcharges so as not to repay plaintiffs and so as not to jeopardize the sale of the Bank's loans to third parties.

### *Subsequent Litigation, Threats, and Property Seizures*

64.     NAMA continues to this day to demand payment from plaintiffs on outstanding fraudulent interest overcharges.   Until NAMA's recent appointment of

receivers to the Flynn properties, plaintiffs have, under protest, paid the interest demanded and allegedly due on most of their outstanding loans.

65.     Nonetheless, NAMA continues to seek foreclosure on plaintiffs' assets, and it demands payments from plaintiffs pursuant to their personal guarantees.

66.     Indeed, NAMA and IBRC have sued plaintiffs in the Irish courts to recover monies and assets, including property owned by plaintiff Leona Flynn, who does not hold a loan with NAMA.

67.     The Irish claims against plaintiff Dr. Joseph Sheehan were based upon forged powers of attorney, which Wallace, Richardson and Byrne Wallace knew or should have known were not legally valid documents.

68.     In retaliation for plaintiff Dr. Sheehan's participation in a federal action against IBRC in New York (addressed *infra*), the Special Liquidators have illegally seized cash assets from him in excess of $2 million.  They have also instructed defendant law firm Byrne Wallace to take his assets held at Blackrock Hospital to which the Special Liquidators have no valid claim (*see* Exhibit G).

69.     NAMA has also threatened the Flynn Family that it will take legal action to seize their assets if they do not pay alleged outstanding monies.

70.     NAMA, and its employees Brendan McDonagh ("McDonagh"), Michael Foley ("Foley"), and Laura Mulrooney ("Mulrooney"), have also moved to appoint receivers over certain Flynn Family assets  (*see* Exhibit H).

71.     In August 2013, Declan Ganley, a prominent Irish businessman, filed a criminal complaint with the Irish Police regarding the Bank's continuing fraudulent scheme.

### *Undervaluation of Plaintiff's Assets, Self Dealing and*
### *Leaking of Confidential Information*

72.      Upon information and belief, defendants NAMA, McDonagh, Foley and Mulrooney engaged in a systematic looting of the plaintiffs' assets held by NAMA for their own benefit and for the benefit of other related parties.

73.      The plaintiffs have direct knowledge that a NAMA executive has disclosed to an agent, acting for prospective purchasers of plaintiffs' loans, confidential information relating to plaintiffs' loans, property, and assets for the purpose of defrauding plaintiffs, to the benefit of NAMA, its employees and its executives.

74.      As part of this conspiracy to unlawfully deprive plaintiffs of their assets, NAMA has sought to dispose of plaintiffs' assets at below market value to related third parties for the benefit of current and former NAMA employees.

75.      NAMA and its employees have conspired with buyers of NAMA loans so as to further defraud borrowers, including plaintiffs.   To date, only two NAMA employees have been charged, but it is plaintiffs' information and belief that this conspiracy permeates the organization.

76.      On December 18, 2013 the Irish police fraud detectives confirmed that they had begun a criminal investigation of NAMA based on allegations that NAMA manipulated the price it paid banks for 'bad loans' so as to unjustly enrich itself, its employees, and related entities.

### *Plaintiffs Sue for Fraud in the SDNY*

77.      Pursuant to the IBRC Liquidation Act Section 6(2)(b), the Irish Court refused to grant plaintiffs permission to bring a civil fraud action in an Irish Court.

78.      On June 6, 2013, plaintiffs sued IBRC, NAMA, and related defendants for

fraud in in the Southern District of New York in an action entitled *Flynn v. Irish Bank Resolution Corp.*, 1:13-cv-03882-NRB (SDNY) (the "Prior SDNY Action").   In that action, plaintiffs seek (i) rescission of the fraudulent loans, (ii) rescission of personal guarantees given with regard to the loans; and (iii) payment of sums wrongfully obtained by IBRC pursuant to the fraudulent scheme.   A copy of the Complaint is attached hereto as Exhibit I.

79.     In response to this filing, NAMA, McDonagh, Foley, and Mulrooney carried out a campaign of intimidation against plaintiffs, amounting to an obstruction of justice.   They threatened to deprive plaintiffs of property controlled by NAMA and to seize plaintiffs' assets unless plaintiffs dropped their legal action (*see* Exhibit J).

80.     NAMA, Niall White ("White"), and Barry O'Brien ("O'Brien") sent several written and email communications to the plaintiffs in the Prior SDNY Action threatening retaliation if they did not withdraw their claims.   These threats caused at least five plaintiffs in that action to withdraw their claims.

81.     As was foreshadowed by NAMA's threatening letters (and those sent by White and O'Brien), NAMA has engaged in a systematic effort to retaliate against the plaintiffs who continued their claims, but not against those who withdrew them.

### IBRC Files a Sham Chapter 15 Bankruptcy Petition

82.     Seeking further to frustrate the Prior SDNY Action, on August 26, 2013, The Special Liquidators filed a Verified Petition under Chapter 15 for Recognition of a Foreign Proceeding (the "Chapter 15 Petition") in the United States Bankruptcy Court for the District of Delaware, Case No. 13-12159-CSS.   A copy of the Petition is attached hereto as Exhibit K.

83.     Plaintiffs believe that this Chapter 15 Petition is a sham and that its sole purpose was to effect a stay on the Prior SDNY Action.

84.     On September 13, 2013, plaintiffs filed an Opposition to the Verified Petition Under Chapter 15 For the Recognition of a Foreign Proceeding.  *See* Exhibit L. Their objections are as follows:  (1) IBRC is a foreign bank within the meaning of 11 U.S.C. § 1501(C)(L) and thus is not eligible to be a debtor under Chapter 15; (2) the Petition and supporting papers fail to provide proper justification for recognizing the Irish proceeding as a foreign main proceeding; and (3) the court should deny recognition of the Irish proceeding as a foreign proceeding on public policy grounds pursuant to Section 1506 of the Bankruptcy Code.

85.     On September 9, 2013, the Special Liquidators presented the court in the Prior SDNY Action with notice that due to the Chapter 15 filing, the automatic stay provision of the Bankruptcy Code required the Prior SDNY Action to be stayed.  *See* Exhibit M.

86.     Since that time, the Prior SDNY Action has been put on hold.

87.     In the Bankruptcy proceeding, defendants Wallace and Mark Traynor ("Traynor") made false representations and gave false testimony as follows: (i) they falsely denied knowledge of fraudulent interest overcharging by the Bank and IBRC; and (ii) they fundamentally mischaracterized the nature of the IBRC liquidation undertaken by the Irish Government and the specifics of the relevant Irish legislation.

88.     Based upon this false and misleading testimony, on December 18, 2013, the U.S. Bankruptcy Court granted recognition of the IBRC Liquidation and stayed the Prior SDNY Action.

## FIRST CLAIM:  18 U.S.C. § 1962(C)
### *(Against All Defendants)*

89.     Plaintiffs herein incorporate all prior paragraphs in this Complaint.

90.     At all relevant times, plaintiffs have been persons within the meaning of 18 U.S.C.§§ 1961(3) and 1962(c).

91.     At all relevant times, defendants have been persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

92.     Defendants Fitzpatrick and O'Mahoney's acts in effecting the fraudulent interest overcharges, the continued overcharging, and the cover-up (including threats, property seizures, obstructions of justice, witness tampering, and a sham federal bankruptcy filing) by defendants Aynsley, NAMA, White, O'Brien, Hoey, Foley, Mulrooney, O'Reilly, McDonagh, Wallace, and Richardson have been in coordination with a RICO enterprise (the "Enterprise").

93.     The Enterprise's affairs have been conducted, managed, and operated through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), and they violate § 1962(c).

94.     The Enterprise is an association-in-fact per 18 U.S.C. §§ 1961(4) and 1962(c).

95.     It is primarily funded by the Irish Government and is controlled by the Irish Department of Finance and the Irish Minister for Finance.  It operates with a command structure pursuant to which individual actors have assigned responsibilities.

96.     In overseeing the Enterprise, NAMA has:  (i) directed the cover-up; (ii) procured sham foreclosure actions against plaintiffs' loans; (iii) conducted a massive public campaign to spread false information about plaintiffs and the loans; and (iv)

obstructed plaintiffs' attempts to seek legal redress.

97.    Defendants have committed the following "predicate acts" under 18 U.S.C. § 1961, constituting a pattern of racketeering within the meaning of 18 U.S.C. § 1961(5):

**(1)    Mail and Wire Fraud, in Violation of 18 U.S.C. §§ 1341 and 1343**

98.    Defendants committed mail and wire fraud (as summarized in Exhibit N) by transmitting, or causing the transmission of, the following in furtherance of their scheme:

(a)    Emails and website postings incorporating false and misleading statements about plaintiffs' loans and debts;

(b)    Wirings and/or mailings about the loans and plaintiffs' property;

(c)    Communications to federal courts and foreign courts incorporating false and misleading statements;

(d)    Funds transferred by IBRC and NAMA to A&L Goodbody, Traynor, and Byrne Wallace with the intent that they be used to carry out the Enterprise; and

(e)    Electronic filing and service of court papers containing false and misleading statements intended to obstruct justice.

99.    Defendants participated in this scheme knowingly and willfully, with the intent to deceive or defraud plaintiffs.

100.    Defendants repeatedly demanded and received payment from plaintiffs on interest balances known to be fraudulent.

101.    Defendants also appointed receivers to unlawfully seize assets.

**(2)    Obstruction of Justice and Witness Tampering in Violation of 18 U.S.C. §§ 1503 and 1512**

102.    After the Prior SDNY Action was filed (i) White, and O'Brien threatened plaintiffs, causing several to drop their claims; (ii) the Special Liquidators seized cash assets from Dr. Sheehan and instructed Byrne Wallace to take his other assets; (iii) NAMA, McDonagh, Hoey, Foley, O'Reilly and Mulrooney sought to appoint receivers to the Flynn Family's assets in a further attempt to obstruct their legal rights;  (iv) NAMA engaged in a concerted effort to procure false testimony from its employees and to cause them to withhold relevant documents and testimony; (v) NAMA, IBRC, KPMG, A&L Goodbody, Wallace, Richardson, and Traynor filed or caused to be filed false court documents; and (vi) Wallace and Traynor made false representations and gave false testimony.

103.    These acts constitute obstruction of justice and witness tampering in violation of 18 U.S.C. §§ 1503 and 1512.

**(3)     Bankruptcy Fraud in Violation of 18 U.S.C. § 157**

104.    As discussed above, the sham Chapter 15 filing also constitutes bankruptcy fraud in violation of 18 U.S.C. § 157.

105.    Due to all of the foregoing predicate acts, plaintiffs were injured pursuant to 18 U.S.C. § 1962(c) as to their reputation and goodwill; impairment of their interests in executed contracts; impairment of their rights and interest in property; and as to the expense of attorneys' fees and costs to prosecute claims and block the sham Chapter 15 proceeding.

106.    These injuries were a direct, proximate, and reasonably foreseeable result of defendants' violation of 18 U.S.C. § 1962.

107.    Plaintiffs are thus entitled to treble damages, attorneys' fees, and costs, per

18 U.S.C. § 1964(c).

108.    Plaintiffs are also entitled to a preliminary and permanent injunction precluding defendants, their assignees, and anyone acting in concert with them, from any action (directly or indirectly) (i) to recognize or enforce any debt, including any personal guarantees by plaintiffs as security; (ii) to obtain judgment in any court, tribunal, or agency anywhere (here or abroad) regarding the debt or guarantees; and (iii) to attach or seize plaintiffs' assets (or those of plaintiffs' subsidiaries or co-venturers) whether pre-judgment or otherwise, prior to this Court's entry of judgment herein.

### SECOND CLAIM:   RICO CONSPIRACY, 18 U.S.C. § 1962(d)
#### *(Against All Defendants)*

109.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

110.    Defendants willfully conspired in violation of 18 U.S.C. § 1962(d).  Each co-conspirator knew his or her predicate acts were part of the Enterprise and that his or her participation was necessary to conduct the racketeering activity.

111.    This conspiracy (i) damaged plaintiffs' reputation and goodwill; (ii) impaired plaintiffs' contracts interests; and (iii) impaired plaintiffs' rights to property and funds.  Pursuant to 18 U.S.C. § 1964(c), plaintiffs are thus entitled to treble damages plus attorneys' fees and costs.

112.    Plaintiffs are also entitled to a preliminary and permanent injunction precluding defendants, their assignees, and anyone acting in concert with them, from any action (directly or indirectly) (i) to recognize or enforce any debt, including any personal guarantees by plaintiffs as security; (ii) to obtain judgment in any court, tribunal, or agency anywhere (here or abroad) regarding the debt or guarantees; and (iii) to attach or seize plaintiffs' assets (or those of plaintiffs' subsidiaries or co-venturers) whether pre-

judgment or otherwise, prior to this Court's entry of judgment herein.

### THIRD CLAIM:  FRAUD
*(Against Fitzpatrick, O'Mahoney, Aynsley,*
*Wallace, Richardson, and NAMA)*

113.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

114.    In addition to the fraud conducted by willfully overcharging interest rates,
defendants also made fraudulent misrepresentations regarding:

(a)    applicable interest rates;

(b)    charges on arrangement fees;

(c)    terms of the agreements;

(d)    the issuance of facility letters increasing margins on loans without
the borrower's signature, agreement or knowledge;

(e)    arbitrary application of a liquidity charge to interest rates;

(f)    risks involved in acquiring the loans;  and

(g)    the loans' suitability for their investment purposes.

115.    Moreover, the Bank made material omissions of fact as follows:

(a)    failure to conduct adequate due diligence to oversee the terms of
the loans;

(b)    failure to provide plaintiffs with a balanced disclosure of purported
interest rate changes;

(c)    failure to implement internal Bank controls; and

(d)    failure properly to train personnel regarding risks and suitability of
loans.

116.    Upon entering the loans, the Fitzpatrick and O'Mahoney knew their

statements and omissions were false.  They also knew or should have known that plaintiffs would be persuaded to invest in the loans due to the statements of the Bank's loan officer, Kieran Duggan, who vouched for the veracity of the agreements.

117.    The Bank also induced false guarantees from plaintiffs by way of material misrepresentations and omissions.

118.    As successor, IBRC (and its CEO Aynsley) furthered this fraud.

119.    Plaintiffs are thus entitled to rescission of the loans, termination of all guarantees, and reimbursement of the overcharges plus interest.

### FOURTH  CLAIM:  TRESPASS TO CHATTELS
*(Against McDonagh, Hoey, Foley, Mulrooney, O'Reilly*
*Wallace, Richardson, KPMG, and NAMA)*

120.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

121.    By way of the foregoing criminal scheme to overcharge interest, prosecute fraudulent lawsuits, manufacture false evidence, tamper with testimony, disseminate misleading statements to courts and the public, and otherwise engage in a pressure campaign, defendants have intentionally, without justification, interfered with plaintiffs' use and enjoyment of (i) their funds intended for business purposes; (ii) their real and personal property; and (iii) their business reputations and goodwill.

122.    Accordingly, plaintiffs seek compensatory and punitive damages.

123.    Plaintiffs are also entitled to a preliminary and permanent injunction precluding defendants, their assignees, and anyone acting in concert with them, from any action (directly or indirectly) (i) to recognize or enforce any debt, including any personal guarantees by plaintiffs as security; (ii) to obtain judgment in any court, tribunal, or agency anywhere (here or abroad) regarding the debt or guarantees; and (iii) to attach or

seize plaintiffs' assets (or those of plaintiffs' subsidiaries or co-venturers) whether pre-judgment or otherwise, prior to this Court's entry of judgment herein.

### FIFTH CLAIM:  UNJUST ENRICHMENT
***(Against Fitzpatrick, O'Mahoney, Wallace,
Richardson, KPMG, and NAMA)***

124.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

125.    Defendants have been unjustly enriched in obtaining millions of dollars from plaintiffs through fraudulent overcharging.

126.    Accordingly, plaintiffs seek disgorgement of all ill-gotten gains.

127.    Plaintiffs are also entitled to a preliminary and permanent injunction precluding defendants, their assignees, and anyone acting in concert with them, from any action (directly or indirectly) (i) to recognize or enforce any debt, including any personal guarantees by plaintiffs as security; (ii) to obtain judgment in any court, tribunal, or agency anywhere (here or abroad) regarding the debt or guarantees; and (iii) to attach or seize plaintiffs' assets (or those of plaintiffs' subsidiaries or co-venturers) whether pre-judgment or otherwise, prior to this Court's entry of judgment herein.

### SIXTH CLAIM:  CIVIL CONSPIRACY
***(Against All Defendants)***

128.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

129.    Defendants have conspired to commit racketeering, fraud, and trespass to chattels in an unlawful scheme to obtain property from plaintiffs.  These acts were malicious, willful, and fraudulent.

130.    As a result of this conspiracy, plaintiffs have been damaged in their business and property.  Moreover, threat of further damage is imminent.

131.    Plaintiffs seek compensatory and punitive damages.

132.   Plaintiffs are also entitled to a preliminary and permanent injunction precluding defendants, their assignees, and anyone acting in concert with them, from any action (directly or indirectly) (i) to recognize or enforce any debt, including any personal guarantees by plaintiffs as security (ii) to obtain judgment in any court, tribunal, or agency anywhere (here or abroad) regarding the debt or guarantees; and (iii) to attach or seize plaintiffs' assets (or those of plaintiffs' subsidiaries or co-venturers) whether pre-judgment or otherwise, prior to this Court's entry of judgment herein.

### SEVENTH CLAIM:  NY JUDICIARY LAW § 487
#### (*Against A&L Goodbody, Traynor and Byrne Wallace*)

133.   Plaintiffs herein incorporate all prior paragraphs in this Complaint.

134.   New York Judiciary Law § 487 provides in relevant part as follows:

> An attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

135.   Traynor, A&L Goodbody, and Byrne Wallace have engaged in an intentional pattern of collusion, wrongdoing, and deceit seeking to deceive (i) plaintiffs; (ii) federal courts (including the SDNY and the United States Bankruptcy Court in Delaware); (iii) Irish courts; and (iv) United Kingdom Courts.

136.   Each has prepared false and misleading court submissions regarding the interest overcharges.

137.   As a result of this wrongdoing, plaintiffs are entitled to treble damages and reasonable attorneys' fees.

### EIGHTH CLAIM:  BREACH OF FIDUCIARY DUTY
#### (*Against Fitzpatrick, O'Mahoney, Aynsley,*
#### *Wallace, Richardson, KPMG, and NAMA*)

138.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

139.    Fitzpatrick, O'Mahoney, Aynsley and NAMA each owed plaintiffs a fiduciary duty in effecting and managing their Loans.  They occupied a position of trust and confidence and thus owed plaintiffs a duty of care as to honest management and administration of their money and investments.

140.    The Bank knowingly and willfully misappropriated the funds by overcharging interest.

141.    Defendants further breached their fiduciary duty by intentionally misrepresenting that the agreements would be honored (without arbitrary changes to interest).

142.    As a result of this breach, plaintiffs are entitled to damages exceeding $12 million plus interest, and to have their personal guarantees set aside.

### NINTH CLAIM:  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
*(Against Fitzpatrick, O'Mahoney, Aynsley, Wallace, Richardson, and NAMA)*

143.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

144.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant requires that no party shall do anything to impair, destroy, or injure the rights of another party in receiving the benefit of the agreement, and that all parties will do what is reasonably contemplated by the terms of the contract.

145.    Defendants failed to comply with this obligation.

146.    They engaged in acts so as to intimidate and coerce plaintiffs into actions

contrary their own interests.

147.    Defendants willfully breached their implied covenant of good faith and fair dealing by overcharging plaintiffs interest and refusing to provide commercially reasonable information to plaintiffs.

148.    As a result, plaintiffs are entitled to compensatory damages in excess of $12,000,000, and to have their personal guarantees set aside.

### TENTH CLAIM:  NEGLIGENCE
*(Against Fitzpatrick, O'Mahoney, Aynsley, Byrne Wallace,*
*Traynor, A&L Goodbody, Wallace, Richardson, NAMA and KPMG)*

149.    Plaintiffs herein incorporate all prior paragraphs in this Complaint.

150.    Defendants Fitzpatrick, O'Mahoney, Aynsley, Wallace, Richardson and NAMA owed plaintiffs a duty of reasonable care and skill to maintain loan records and properly service loans transactions.

151.    Defendants breached this duty in (i) failing properly to credit plaintiffs' payments; (ii) overcharging on interest; (iii) preparing and filing false documents; and (iv) foreclosing on properties without legal authority to do so.

152.    Defendants  Byrne  Wallace,  Traynor,  A&L  Goodbody,  Wallace, Richardson, NAMA and KPMG demanded payment of interest they knew to be the fruits of overcharging and took action to seize assets and otherwise impair plaintiffs' property in a continuing effort to further the fraud against plaintiffs.

153.    Defendants' negligent acts have caused plaintiffs damages in an amount to be determined at trial but not less than $12,000,000.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully the following relief:

i.      Damages in excess of $12,000,000 plus pre-judgment interest accruing at the statutory rate of 9% since 2009;

ii.     Punitive damages where applicable;

iii.    Treble damages where applicable;

iv.    Reasonable attorneys' fees and costs;

v.     Equitable relief including but not limited to a temporary restraining order and a preliminary and permanent injunction precluding defendants, their assignees, and anyone acting in concert with them, from any action (directly or indirectly) (a) to recognize or enforce any debt, including any personal guarantees by plaintiffs as security; (b) to obtain judgment in any court, tribunal, or agency anywhere (here or abroad) regarding the debt or guarantees; and/or (c) to attach or seize plaintiffs' assets (or those of plaintiffs' subsidiaries or co-venturers) whether pre-judgment or otherwise, prior to this Court's entry of judgment herein;

vi.    Rescission of all fraudulent loan contracts and personal guarantees; and

vii.   Such other legal and equitable relief as the Court may deem proper.


### JURY DEMAND

Plaintiffs hereby demand a trial by Jury.

Dated:    New York, New York
          December 20, 2013

                                    Leonard Zack & Associates

                              By: _____
                                    Leonard Zack, Esq.
                                    405 Park Avenue
                                    10th Floor
                                    New York, NY 10022
                                    (212) 754-4050


                                    _____
                                    Lawrence Daniel O'Neill
                                    O'Neill and Company
                                    240 Central Park South
                                    New York, NY 10019
                                    (917) 675 4864

                                    *Attorneys for Plaintiffs*

                                    Rachel Schulman, Esq. PLLC
                                    14 Bond Street, Suite 143
                                    Great Neck, NY 11021
                                    (917) 270-7132

                                    *Of Counsel*

### Verification of John Flynn, Sr.

I, John Flynn, Sr., hereby declare under penalty of perjury as follows:

1.  I have reviewed the Verified Complaint and Jury Demand in *Flynn v.*

*National Asset Management Agency* (S.D.N.Y. filed December 20, 2013).

2.  Regarding the allegations of which I have personal knowledge, I believe

them to be true.

3.  Regarding the allegations of which I do not have personal knowledge, I

believe them to be true based on specified information, documents, or both.

4.  I swear that the foregoing is true and correct.

Dated: *WEST PALM BEACH*, Florida
December 20, 2013

John Flynn, Sr., *Plaintiff*

On this 20th day of December 2013, I hereby certify that
as Notary Public herein: (i) I identified John Flynn, Sr.;
(ii) I administered an oath to him; and (iii) he signed
this Verification in my presence.

Dated: *WEST PALM BEACH*, Florida
December 20, 2013

Signature

LEWIS F. CRIPPEN
Provide Name and SEAL
My commission expires: _____

LEWIS F. CRIPPEN
MY COMMISSION # FF 055787
EXPIRES: October 8, 2017
Bonded Thru Notary Public Underwriters

## Certification of Leonard Zack, Esq.

I, Leonard Zack, Esq., hereby certify, as counsel to plaintiffs in *Flynn v. National Asset Management Agency* (S.D.N.Y. filed December 20, 2013), that a temporary restraining order should be granted to plaintiffs pending an expedited hearing on plaintiffs' application for a preliminary injunction. Personal service of the complaint and a copy of all moving papers will be served expeditiously upon the defendants.

By: _____

Leonard Zack, Esq.
Leonard Zack & Associates
405 Park Avenue
10th Floor
New York, NY 10022
(212) 754-4050

### Verification of Dr. Joseph Sheehan

I, Dr. Joseph Sheehan, hereby declare under penalty of perjury as follows:

1.    I have reviewed the Verified Complaint and Jury Demand in *Flynn v. National Asset Management Agency* (S.D.N.Y. filed December 20, 2013).

2.    Regarding the allegations of which I have personal knowledge, I believe them to be true.

3.    Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on specified information, documents, or both.

4.    I swear that the foregoing is true and correct.

Dated: _Dec 20th_ , Illinois          _Joseph le M Sheehan_
December 20, 2013                 Dr. Joseph Sheehan, *Plaintiff*

On this 20th day of December 2013, I hereby certify that as Notary Public herein: (i) I identified Dr. Joseph Sheehan; (ii) I administered an oath to him; and (iii) he signed this Verification in my presence.

Dated: _Chicago_, Illinois
December 20, 2013

Signature

H. Lisa Perez

Provide Name and SEAL
My commission expires: _10/20/2017_

"OFFICIAL SEAL"
A LISA PEREZ
Notary Public, State of Illinois
My Commission Expires 10/20/2017