UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN FLYNN, SR., et al.,

                Plaintiffs,

     -against-                                    13-cv-09035 (LAK)

NATIONAL ASSET MANAGEMENT AGENCY/
NATIONAL ASSET MANAGEMENT LIMITED, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Leonard Zack
        LEONARD ZACK & ASSOCIATES

        Lawrence Daniel O'Neill

        *Attorneys for Plaintiffs*

        Richard A Beran
        Thomas J. Goodwin
        MCCARTER & ENGLISH, LLP
        *Attorneys for National Asset Management Agency Defendants*

        Anthony P. Callaghan
        Robert C. Brady
        Jonathan D. Klein
        GIBBONS P.C.
        *Attorneys for Defendants Arthur Michael Royal Aynsley and Allan Dukes*

        Jean-Marie L. Atamian

                                            Michelle J. Annunziata
                                            MAYER BROWN LLP
                                            *Attorneys for Defendant Byrne Wallace*

LEWIS A. KAPLAN, *District Judge.*

        This is an action by five members of the Flynn family (the "Flynns") and fifteen or more entities to which they have some connection (the "Entities") against twenty three individuals and entities arising out of the Flynns' borrowing from an Irish bank[1] of more than $200 million to finance the Flynn plaintiffs' real estate activities. The amended complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and on theories of fraud, trespass to chattels, conversion, unjust enrichment, constructive trust, civil conspiracy, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and negligence. Now before the Court are the plaintiffs' motion for a preliminary injunction[2] and motions by various defendants to dismiss the case for lack of subject matter and personal jurisdiction, on the ground of *forum non conveniens*, for failure to plead fraud with the requisite particularity, and for failure to state a claim upon which relief may be granted.[3] As the Court has concluded that the action should be dismissed on the ground of *forum non conveniens*, it is unnecessary to address most of the defendants' arguments.[4]

---

[1]     The case has been dismissed as to two plaintiffs.

[2]     DI 28.

[3]     DI 44-45, 64, 67, 73, 74.

[4]     The jurisdictional issues here raise considerable factual and legal questions, including whether and how the Foreign Sovereign Immunities Act applies to NAMA and the extent of the New York connections of each of more than twenty defendants. Determining *forum non conveniens* issue first will save the Court and the parties unnecessary delay and expense. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1186-87 (2007)

2

*Facts*

*The Background of the Lawsuit*

Beginning in or about 1994, plaintiffs borrowed over $200 million from the Anglo Irish Bank Corporation (the "Bank") in 84 loan transactions to purchase and develop real estate in Ireland, the United Kingdom, and the United States.[5] Most were guaranteed by the Flynns personally.[6] Some allegedly were negotiated, at least in part, in the United States.[7]

In 2008, at the time of the well known financial crisis, the Bank was failing. The Republic of Ireland ("Ireland") allegedly injected capital into it, guaranteed its liabilities and, in January 2009, became its sole shareholder.[8]

Plaintiffs allege that the Bank in 2010 sold €35 billion of loans – including those of the plaintiffs – to something they call NAMA/NAML, which they allege is a for-profit company

---

("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."); *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720, n.6 (2d Cir. 2013) (same); *Seales v. Panamanian Aviation Co.*, 356 F. App'x 461, 462-63 (2d Cir. 2009) ("We need not construe the preemptive scope of the Montreal Convention because we think the 'less burdensome course' in this case, which was dismissed only in part on this ground, is to address the clearer *forum non conveniens* inquiry first."); *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 F. App'x 87, 89 (2d Cir. 2008) ("RUSAL moved to dismiss under Fed.R.Civ.P. 12(b)(6) on several grounds including jurisdiction and *forum non conveniens*. The district court granted the motion and dismissed the suit for *forum non conveniens*, choosing not to address the jurisdictional argument pursuant to *Sinochem* . . . .").

[5] Amended complaint [DI 19] ("Cpt.") ¶¶ 41-42.

[6] *Id.* ¶ 44.

[7] *Id.* ¶ 45.

[8] *Id.* ¶ 56.

created by the Irish National Asset Management Agency Bill of 2009.[9]  In fact, however, Ireland created the National Asset Management Agency ("NAMA") on December 21, 2009 pursuant to the National Asset Management Agency Act (Establishment Day) Order 2009 and the National Asset Management Agency Act, 2009 (the "NAMA Act").[10]  NAMA is an agency of the Irish government and has no private ownership.[11]  National Asset Management Limited ("NAML") is a special purpose vehicle that financed NAMA's acquisition of loans from Irish financial institutions.[12]

Plaintiffs claim to have discovered in 2010 that the Bank – which by then was or shortly thereafter became a predecessor in interest to NAMA upon NAMA's purchase of the plaintiffs' loans from the Bank – had been overcharging them for interest for over a decade.[13]  They allege, on information and belief, that the Bank then entered into a conspiracy with "NAMA/NAML" *and the Irish government* "to cover up the fraudulent charges and intimidate the Flynn Plaintiffs into silence" in order to preserve the assets of the Bank and its successors.[14]  And the story goes on from there, the plaintiffs asserting broadly that NAMA and other defendants continue fraudulently to overcharge them and have mounted a campaign to coerce them into dropping their claims and keeping silent by suing them in Irish courts, threatening asset seizures,

---

[9] *Id.* ¶ 57.

[10] MacDonncha Decl. [DI 46] ¶¶ 4-6.

[11] Smyth Decl. [DI 47] ¶¶ 4-5.

[12] Cpt. ¶¶ 57-58.

[13] *Id.* ¶¶ 49-52.

[14] *Id.* ¶¶ 65, 55.

4

tampering with witnesses, and so on.  According to plaintiffs, the defendants also are threatening to dispose of Flynn assets at inadequate prices and otherwise to take advantage of them.

*The Irish Litigation*

On February 19, 2013, and thus months before the commencement of this action,[15] Leona Flynn commenced an action in the High Court in Dublin, seeking a declaration that she has no personal obligation under the so-called Belfield Park Loan, one of the loans that is the subject of this action.[16]  Her statement of claim asserted that she is "a lady with a residence" in Dublin.[17]

On May 8, 2013, also well before the commencement of this action, National Asset Loan Management Limited, the relevant NAMA subsidiary and the defendant in that action, filed a counterclaim against all five of the Flynns seeking recovery of €22 million said to be owed by them on the Belfield Park Loan.[18]

*The Parties*

The plaintiffs commenced this action on December 20, 2013.  Their amended

---

[15] The Flynns previously filed a substantially similar action in this Court on June 6, 2013. *Flynn v. Irish Bank Resolution Corp.,* 13 Civ. 3882 (LAK).  That action was stayed in consequence of the placement of the Irish Bank Resolution Corp. into special liquidation in Ireland and the filing in the United States on behalf of its liquidators of a proceeding under Chapter 15 of our Bankruptcy Code. It has not been reactivated.

[16] Smyth Decl. ¶ 15 & Ex. B.

[17] *Id.* Ex. B, at 2 of 12.

[18] *Id.* ¶ 16 & Ex. C.

complaint seeks, among other things, damages, rescission of all of the loan agreements and personal guarantees, and an injunction restraining defendants from an action "(a) to recognize or enforce any debt, including any personal guarantees by Plaintiffs as security; (b) to obtain judgment in any court, tribunal, or agency anywhere (here or abroad) regarding the debt or guarantees; and/or (c) to attach or seize Plaintiffs' assets (or those of Plaintiffs' subsidiaries or co-venturers)."[19] As the Court already has summarized the nature of plaintiffs' claims, it remains, in light of the *forum non conveniens* issues, principally to outline the connections of the relevant parties to Ireland and the United States.

*Plaintiffs*

The Flynns plainly have substantial connections to Ireland as well, in most instances, to Florida:

- James Flynn concededly is domiciled and permanently resides in Ireland.[20]
- John Flynn, Sr., is a legal permanent resident ("LPR") of the United States and claims a Palm Beach, Florida, domicile.[21] The fact that he is an LPR, however, necessarily implies that he is an alien, and there is unrebutted evidence that he is a citizen of Ireland and maintains a Dublin address.[22]

---

[19] Cpt. at 29-30.

[20] *Id.* ¶ 15.

[21] *Id.* ¶ 11.

[22] Smyth Decl. [DI 47] ¶¶ 18, 21 & Exs. C, D, and H.

6

- Leona Flynn is a natural born U.S. citizen who claims a Palm Beach, Florida, domicile at the same address as John Flynn, Sr.[23] As noted, however, Ms. Flynn asserted in her statement of claim in her Irish action that she is "a lady with a residence" in Dublin.[24]

- Neither John Flynn, Jr., nor Elaine Flynn claims U.S. citizenship. Both claim a Palm Beach, Florida area residence, as distinguished from domicile.[25] Both hold Irish driving licenses that list their permanent addresses as being in Dublin.[26] John Flynn, Jr., is listed in the Flynns' pleadings in the Irish action as a London resident.[27]

Plaintiffs concede that all but three of the Entities "resid[e] outside of the United States."[28] Two of the other three Entities are limited liability companies and the third a trust, in each case said to be organized under Florida law.[29] Plaintiffs, however, have provided almost no information as to the identities or places of residence, domicile or business of the members of the LLCs or the trustee. They allege only that the Flynns either control *or* have guaranteed obligations

---

[23] Cpt. ¶ 12; L. Flynn Decl. [DI 82] ¶¶ 4-5.

[24] Smyth Decl. Ex. B, at 2 of 12.

[25] *Id.* ¶¶ 13-14.

[26] Smyth Decl. ¶ 19 & Ex. E.

[27] *Id.* ¶ 21 & Ex. H ¶ 1(a) (admitting that John Flynn, Jr., is a London resident).

[28] *Id.* ¶ 19.

[29] *Id.* ¶¶ 16-18.

7

of twelve of the fifteen,[30] but there is no information as to which they control and for which they have provided guarantees.

*Defendants*

NAMA and NAML both are Irish entities having their only offices in Dublin. With the exception of defendant Arthur Michael Royal Aynsley and, arguably, Bryne Wallace, all of the remaining defendants live in Ireland.[31] Aynsley resides in London.[32] Byrne Wallace, according to plaintiffs, is "an Irish solicitors law firm" but is said to have a New York City office.[33]

*Discussion*

District courts have considerable discretion in applying the principle of *forum non conveniens*. The Second Circuit, however, has established:

> "a three-step process to guide the exercise of [a district court's] discretion [in doing so]. At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice

---

[30] *Id.* ¶ 19.

[31] *Id.* ¶¶ 22-35.

[32] *Id.* ¶ 28.

[33] *Id.* ¶ 30.

Byrne Wallace "is an Irish law firm, organized under Irish law, with its principal place of business in Dublin." Prendergast Decl. [DI 65] ¶ 2. The firm "maintains *de minimis* office services at 415 Madison Avenue in New York." *Id.* ¶ 9. The "'office' is monitored by a third-party answering service." *Id.* ¶ 11. It asserts that it "has no lawyers or other employees in New York." *Id.* ¶ 3.

8

of forum."[34]

*Degree of Deference to Plaintiffs' Choice of Forum*

"Any review of a *forum non conveniens* motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'"[35] But the strength of that presumption, and thus the degree of deference, varies with circumstances. It is strongest where the plaintiff chooses the plaintiff's home forum, but the deference due to a foreign plaintiff's choice of a U.S. forum is less.[36] "These presumptions, however, may not apply, either at all or with full force, to forum choices in particular cases."[37] As our circuit said in *Iragorri*:

> "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens* . . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts."[38]

Thus, this Court is obliged to assess the totality of circumstances in determining the weight to be

---

[34] *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)).

[35] *Id.* at 154 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

[36] *Id.*

[37] *Id.*

[38] *Irragori*, 274 F.3d at 71-72.

9

given to the plaintiff's choice of forum.

> "To facilitate totality review, *Iragorri* identified factors frequently relevant to determining whether a forum choice was likely motivated by genuine convenience: '[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense.' [*Iragorri*, 274 F.3d] at 72. Circumstances generally indicative of forum shopping, that is, plaintiff's pursuit not simply of justice but of "justice blended with some harassment," *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507, 67 S. Ct. 839, include '[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum.' *Iragorri v. United Techs. Corp.*, 274 F.3d at 72; *see generally* Paxton Blair, *The Doctrine of Forum Non Conveniens in Anglo–American Law*, 29 Colum. L. Rev. 1, 34 & n. 155 (1929) (advocating *forum non conveniens* dismissal when plaintiffs attempt 'to sue where verdicts are largest' or 'to avoid some principle of law which would impede recovery in the proper forum')."[39]

We start with the questions whether and to what extent plaintiffs could be said to have brought this action in their respective home *fora*. In one case, that is easy – James Flynn is a citizen and domiciliary of Ireland[40] and thus has elected to sue in a forum that, to him, is entirely foreign.

The picture as to John Flynn, Jr., and Elaine Flynn is slightly less clear. Neither claims U.S. citizenship or domicile, and both claim residences in Ireland and Florida (and John Flynn, Jr., in London as well). Nevertheless, it seems fair to say – in the absence of any claim of U.S. domicile – that the extent to which the United States could be characterized as a "home" forum to either is limited.

---

[39] *Norex*, 416 F.3d at 155.

[40] Cpt. ¶ 15.

John Flynn, Sr., and Leona Flynn present the strongest home forum cases, as both claim (and the Court for purposes of this motion assumes) Florida domicile. In addition, one is a U.S. citizen and the other a legal permanent resident. Nevertheless, even in their cases, the home forum argument does not clear the boards. Both claim residence also in Ireland, and Leona Flynn brought the first action against NAMA in the Irish courts, where she gave as her residence an Irish address.

The situation of the Entities is considerably weaker. The plaintiffs acknowledge that twelve of the fifteen are resident outside the United States. Three are said to be organized under Florida law, but that is neither here nor there because plaintiffs have not disclosed where they do business, maintain offices, or even what the precise connection of the Flynns to each may be.

But the "home" forum determination is not a matter of checking boxes and mechanically coming to some dispositive conclusion. As *Iragorri* and *Norex* made clear, the *forum non conveniens* determination at bottom is an assessment of the relative convenience of alternative *fora*. In this case, (1) even John Flynn, Sr., and Leona Flynn have substantial connections to Ireland as well as to the United States and, in the case of Leona Flynn, has demonstrated the convenience to her of Irish litigation by commencing an action there against NAMA, (2) the Irish connections of John Flynn, Jr., and Elaine Flynn appear to be at least as strong as their U.S. connections, (3) James Flynn has no apparent connections to the United States and the strongest of connections to Ireland, and (4) most of the Entities are entirely foreign or nearly so, and (5) the other three are connected to the United States only by their organization under Florida law and either the Flynns influence over them or their guarantees of certain of their obligations. In the last analysis, then, the Court would be disposed to afford some intermediate level of deference at least to the choice of forum of all of the Flynns other than but James and some lesser degree of deference to that of the

11

Entities were there no indication of forum shopping. But that factor is very much present here and reduces the deference that is appropriate.

A central element of plaintiffs' resistance to *forum non conveniens* dismissal is the contention that Ireland is not an adequate alternative forum because:

> "(i) there is no provision in Irish Law which is analogous to the RICO statute, (ii) Irish law does not provide any civil right of action for criminal wrongs and (iii) several of the core counts in the First Amended Complaint, in particular wire fraud and mail fraud, do not exist at all in Irish law."[41]

The statement that Irish law does not provide any civil right of action for criminal wrongs is at best misleading. Ireland shares with the United States a well developed body of tort law largely derived from our common English antecedent. As even the most cursory glance through leading treatises on Irish law quickly reveals, Ireland affords civil causes of action for tort damages very much like our own for all or substantially all of the wrongs alleged by the plaintiffs.[42] Thus, the argument comes down to the possible availability in the United States of a civil racketeering suit.[43] Putting to one side, for the moment, the question whether the availability of different legal remedies here makes a foreign forum inadequate (as we shall see, it rarely if ever does), the plaintiffs' heavy reliance on RICO as a reason to retain the action here suggests a desire to benefit from whatever *in*

---

[41] Pl. Mem. [DI 78] at 20.

[42] *E.g.*, EOIN QUILL, TORTS IN IRELAND (3d ed. 2009) (discussing Irish tort liability for negligence (at 17), breach of the duty of care (at 19), trespass to chattels (at 205), fraud (at 299), conversion (at 338), conspiracy (at 328)); ANDREW TETTENBORN, LAW OF RESTITUTION IN ENGLAND AND IRELAND (3d ed. 2002) (discussing the Irish causes of action for unjust enrichment (at 4) and breaches of fiduciary duties (at 252)).

[43] There is no private right of action for violation of the mail and wire fraud statutes except to the extent that RICO in some circumstances makes mail and wire fraud predicate acts and thus may afford a remedy in some instances.

12

*terrorem* effect that statute has by virtue of the word "racketeering" and the threat of treble damages.[44]  When this is combined with "the habitual generosity of juries in the United States,"[45] the obvious inconvenience and expense to all of these Irish defendants of litigating this case in New York, and the debatable convenience to the plaintiffs of doing so, especially in light of Leona Flynn's institution in Ireland of the first of the lawsuits relating to this controversy, the Court concludes that the institution of this case in the United States was at least as much a result of forum shopping as it was of any substantial concern with convenience.  The degree of deference due to plaintiffs' choice of this forum is limited.

*Adequacy of Alternative Forum*

As noted, plaintiffs argue that Ireland does not provide an adequate forum, essentially because it does not have a counterpart to civil RICO.  The argument is without merit.

In *Piper Aircraft Co. v. Reyno*,[46] the Supreme Court reiterated that "[t]he possibility of a change in substantive law [in consequence of a change to an alternate forum] should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry."[47]  The Second Circuit, moreover, repeatedly has said that "[a]n alternate forum is adequate if the

---

[44] *See Norex*, 416 F.3d at 155 (noting, even in the absence of a district court finding,"that the possibility of a RICO treble damages award might have made the choice of a United States forum attractive to Norex regardless of convenience.")

[45] *Id.*

[46] 454 U.S. 235 (1981).

[47] *Id.* at 247.

13

defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."[48]  With specific reference to RICO, it has written:

> "[W]e note the well-established principle that '[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d at 74. The principle pertains with particular force to civil RICO actions because few foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes; even more rare are foreign provisions for the recovery of treble damages. Nevertheless, most foreign jurisdictions provide alternative legal actions to address the wrongdoing encompassed by civil RICO. *See, e.g.*, *Transunion Corp. v. PepsiCo. Inc.*, 811 F.2d 127, 129 (2d Cir.1987) *(per curiam)* (rejecting RICO plaintiff's objection to *forum non conveniens* dismissal, holding that foreign fraud action was an adequate substitute)."[49]

As noted earlier, Irish law provides alternative legal actions to address the wrongdoing alleged by these plaintiffs.  Indeed, apart from their unsubstantiated and misleading assertion referred to above, plaintiffs have not contended otherwise.  Accordingly, the Irish courts are an adequate alternative forum.

*Private and Public Interests*

   *Private*

"The private interest factors [pertinent to the *forum non conveniens* analysis] include: (1) ease of access to evidence; (2) the availability of compulsory process for the attendance of

---

[48] *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.34d 384, 390 (2d Cir. 2011) (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 75 (2d Cir. 2003)); *Norex*, 416 F.3d at 157 (quoting *id.*).

[49] *Norex*, 416 F.3d at 158; *see also PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 74 (2d Cir. 1998) (noting that the district court did not abuse its discretion in dismissing a RICO action on *forum non conveniens* grounds where the plaintiffs could challenge the same underlying conduct through a fraud claim in the alternate forum).

unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive."[50]

Plaintiffs here contend that the Bank (which no longer exists) overcharged them for interest for a lengthy period. When they discovered the alleged overcharges, the Bank allegedly entered into a conspiracy with NAMA, NAML *and the Irish government* to cover up the overcharges, to coerce the Flynns to drop their claims, to intimidate or tamper with witnesses, and to sell the Flynns' assets at inadequate prices.

While the parties have not addressed in detail the evidence that will be needed to litigate the Flynns' claims, the nature of those claims demonstrates that the vast bulk of it is in Ireland. NAMA, NAML, all but one of the other defendants,[51] and all of the relevant officials and agencies of the Irish government are located in Ireland. Except to the extent that this Court may have personal jurisdiction over some of the defendants,[52] none is subject to compulsory process here. Certainly the Irish government – which, given the conspiracy allegations, is likely to be the source of considerable non-party evidence – is not. Nor does it seem likely that many (if any) knowledgeable former employees of the Bank, which no longer exists, will be found in the United States.[53] Thus, it seems quite likely that litigation of this case in New York would be heavily

---

[50] *DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 29-30 (2d Cir. 2002).

[51] The exception, defendant Aynsley, resides in London. Cpt. ¶ 28.

[52] The Court of course does not now determine the personal jurisdiction question but it does note that none of the individual defendants resides in this country, that quite a few have not even been served with process, and that others are challenging personal jurisdiction.

[53] For example, defendants Sean Fitzpatrick and Tiarnan O'Mahoney, who allegedly worked for a time in the Bank's former New York office, concededly reside in Ireland. *Id.* ¶¶ 23-

15

burdened by the need to conduct depositions in Ireland which in turn would require either the agreement of the witnesses to testify or the issuance and enforcement through the Irish courts of letters rogatory. That suggests, moreover, that any New York trial would depend significantly on deposition testimony of absent Irish witnesses as opposed to live testimony from persons subject to compulsory process or willing to travel to New York.[54]

In the last analysis, then, the balance of private interest factors tips quite decidedly against a New York forum and in favor of Ireland. On the one hand, the Flynns claim no connection to New York, have connections to Ireland at least comparable to their connections to the United States, and readily could litigate there as evidenced by, among many other things, the fact that the first lawsuit relating to this controversy was commenced by Leona Flynn in Dublin. On the other hand, all of the defendants and all or most of the non-party witnesses and evidence sources are in Ireland or in one instance, England, and this Court could not compel the production of Irish documents or the testimony of Irish witnesses. Litigation here thus would be quite inconvenient for any Irish defendants subject to this Court's personal jurisdiction, and the difficulties of obtaining and presenting proof before this Court quite likely would be substantial.

*Public*

The "public interest factors to be weighed in the *forum non conveniens* inquiry [are]: (1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury

---

24. As noted, defendant Aynsley, also said once to have worked in that New York office, resides in London.

54  There is a strong preference for live testimony. *Iragorri*, 274 F.3d at 75; *GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc.*, 13 Civ. 1395 PKC, 2013 WL 2244315, at *5 (S.D.N.Y. May 21, 2013) (collecting cases).

16

duty on a community with no relation to the litigation; (3) the 'local interest in having localized controversies decided at home;' and (4) avoiding difficult problems in conflict of laws and the application of foreign law."[55]

The Court foresees neither administrative difficulties associated with court congestion nor any difficult conflict of laws or foreign law problems were this case to be litigated here. Courts in this district regularly deal with choice of law and foreign law issues. To whatever extent Irish law might govern, the Court would anticipate no problems in dealing with the law of that jurisdiction, which shares so much with our own. On the other hand, this controversy has virtually nothing to do with New York, even granting the some of the 84 loans at issue were partly negotiated here. There is little reason to accept the possibility of imposing on New York jurors to decide this case if it were to go to trial. And while the loans in question here financed real estate operations in several parts of the world, including the United States, the controversy concerns the administration of the loans by an Irish bank and its successors and, just as significant, the plaintiffs' allegations of a broad conspiracy involving the Irish government and two or more Irish government entities which, if it occurred, took place in Ireland. Plaintiffs' allegations thus charge a controversy that has much to do with Ireland and little to do with New York or the United States save to the extent that some of the Flynns have connections to Palm Beach, Florida, in addition to substantial connections to Ireland.

*Conclusion*

"[T]here is no algorithm that assigns precise weights to the factors that inform *forum*

---

[55] *DiRienzo*, 294 F.3d at 31.

*non conveniens* determinations."[56]  The decision whether to dismiss a case on the ground of *forum non conveniens* lies predominantly within the discretion of the district court,[57] which is obliged to apply the governing legal standards and then to balance the various pertinent factors.  In my view, the balance of factors warrants dismissal.  Defendants' motions to dismiss [DI 44, 64, 73] are granted to the extent that they seek dismissal on the ground of *forum non conveniens* and denied without prejudice in all other respects.  This dismissal is conditional upon the filing on behalf of all moving defendants, on or before August 12, 2014, of a document tolling the running of time from the date of commencement of this action until the thirtieth day after the date of such filing for purposes of determining the timeliness of any action subsequently commenced by plaintiffs in the courts of Ireland with respect to any of the matters asserted in the amended complaint.  The plaintiffs' motion for a preliminary injunction [DI 28] is denied without prejudice.

        SO ORDERED.

Dated:        July 29, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[56] *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001).

[57] *See, e.g.*, *Iragorri*, 274 F.3d at 72; *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).