UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN FLYNN, SR., et al.,

                Plaintiffs,

    -against-                          13-cv-09035 (LAK)

NATIONAL ASSET MANAGEMENT AGENCY/
NATIONAL ASSET MANAGEMENT LIMITED, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION DENYING
## MOTION FOR RECONSIDERATION

Appearances:

        Leonard Zack
        LEONARD ZACK & ASSOCIATES

        Lawrence Daniel O'Neill

        *Attorneys for Plaintiffs*

        Richard A Beran
        Thomas J. Goodwin
        MCCARTER & ENGLISH, LLP
        *Attorneys for National Asset Management Agency Defendants*

        Anthony P. Callaghan
        Robert C. Brady
        Jonathan D. Klein
        GIBBONS P.C.
        *Attorneys for Defendants Arthur Michael Royal Aynsley and Allan Dukes*

Jean-Marie L. Atamian  
Michelle J. Annunziata  
MAYER BROWN LLP  
*Attorneys for Defendant Byrne Wallace*

LEWIS A. KAPLAN, *District Judge.*

This is an action by five members of the Flynn family (the "Flynns") and fifteen or more entities to which they have some connection[1] against twenty-three individuals and entities arising out of the Flynns' borrowing from an Irish bank of more than $200 million to finance the Flynn plaintiffs' real estate activities. The amended complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and on theories of fraud, trespass to chattels, conversion, unjust enrichment, constructive trust, civil conspiracy, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and negligence.

On July 29, 2014, the Court dismissed the amended complaint on the ground of *forum non conveniens*, conditioned on the filing by the moving defendants, on or before August 12, 2014, of a document tolling the running of time from the date of commencement of this action until the thirtieth day after the date of such filing for purposes of determining the timeliness of any action subsequently commenced by plaintiffs in the courts of Ireland with respect to any of the matters asserted in the amended complaint.[2] Such a document was filed, and the dismissal became unconditional, at 2:41 p.m. on August 12, 2014. Later that day, plaintiffs moved, pursuant to S.D.N.Y. Civil Rule 6.3 and Fed. R. Civ. P. 60, for reconsideration. They make two arguments, each directed at a different factor in the *forum non conveniens* analysis.

---

[1] The case previously was dismissed as to two other plaintiffs.

[2] *Flynn v. Nat'l Asset Mgmt. Agency/Nat'l Asset Mgmt. Ltd.*, __ F. Supp. 2d ___, No. 13-cv-9035 (LAK), 2014 WL 3732926 (S.D.N.Y. July 29, 2014) (*"Flynn I"*).

First, plaintiffs in substance contend that the Court erred in concluding that Ireland provides an adequate alternative forum. They assert that, "based on a decision by the Irish High Court that was issued after the Court's Memorandum Order herein, it is now entirely clear that the Irish Courts would decline to hear the instant matter due to lack of jurisdiction . . . . [P]ursuant to the National Asset Management Agency Act of 2009 . . . , the Flynns would be barred from suing NAMA without NAMA's consent. Thus, if NAMA were to decline consent, plaintiffs would be without an avenue for redress due to lack of jurisdiction."[3] In short, they contend that Ireland does not provide an adequate alternative forum absent the consent of the lead defendant. There is a suggestion also that the lack of such a forum in Ireland undercuts the Court's conclusion that the choice of this forum was influenced by forum shopping.

Plaintiffs' second argument is that, "contrary to the knowingly false jurisdictional evidence presented by defendants in this case, each of the Flynn plaintiffs except for James Flynn, is domiciled in the United States."[4] In essence, they argue that the Court therefore was misled into giving too little weight to the presumption in favor of the plaintiffs' choice of forum. And they rely also, in this connection, on a new declaration by John Flynn, Sr., which purports to add to the previous record concerning the Flynns' alleged U.S. domiciles.

Both of these arguments fail. The attempt to portray Ireland as lacking an adequate alternative forum is frivolous. The argument that the National Asset Management Act, 2009 (the "Act") bars suit in Ireland against defendant the National Asset Management Agency ("NAMA") absent its consent was not made in opposition to the defendants' motion and, in any case, patently

---

[3] Pl. Mem. [DI 114] at 2 (emphasis omitted).

[4] *Id.*

is incorrect. The recent Irish High Court decision – far from confirming plaintiffs' argument – refutes it. The claim of fraud by the defendants with respect to alleged "jurisdictional facts" concerning the Flynns' domiciles likewise is baseless.

*Discussion*

*The Rule 6.3 Motion*

Plaintiffs' motion, to the extent it rests on S.D.N.Y. Civil Rule 6.3, is seriously flawed. Relief is available under Rule 6.3 "only if the movant demonstrates that the Court overlooked controlling decisions or factual matters *that were before the Court on the underlying motion.* Such a motion may not advance new facts, issues or arguments not previously presented to the court."[5] As none of the material relied upon in this motion nor the new argument that the Act precludes suit against NAMA in Ireland absent its consent were before the Court on the original motion, the Court quite plainly did not overlook controlling decisions, factual matters or arguments that previously were before it. The plaintiffs are not entitled to relief under Rule 6.3.[6]

*The Rule 60 Motion*

Rule 60(b) provides in relevant part that:

"On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise,

---

[5] *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 349 (S.D.N.Y. 2004) (citations and internal quotation marks omitted) (emphasis added).

[6] In addition, Rule 6.3 proscribes the submission of affidavits and declarations in support of a motion for reconsideration. The new Flynn and Ryan declarations therefore may not be considered to the extent they are relied upon in support of the Rule 6.3 motion.

4

or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, . . . [or] it is based on an earlier judgment that has been reversed or vacated . . .; or (6) any other reason that justifies relief."[7]

Relief under Rule 60(b) is disfavored because it disrupts the finality of judgments.[8] It therefore "is properly granted only upon a showing of exceptional circumstances."[9] And a Rule 60(b) motion is "addressed to the sound discretion of the district court."[10]

In this case, the two grounds advanced for reconsideration are (1) the new contention that the Act forbids suit against NAMA in Ireland absent its consent as well as the decision, just after this Court decided *Flynn I*, of the Irish High Court in *National Asset Loan Management Limited v. Crosbie*,[11] which supposedly so demonstrates, and (2) the alleged fraud by the defendants with respect of "jurisdictional evidence" coupled with the new declaration of John Flynn, Sr., each concerning the Flynns' alleged U.S. domicile.

---

[7] FED. R. CIV. P. 60(b).

[8] *See, e.g.*, *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004); *see also Empresa Cubana Del Tabaco v. General Cigar Co. Inc.*, 385 F. App'x 29, 31 (2d Cir. 2010) ("We have cautioned . . . that Rule 60(b) motions are disfavored. . . .").

[9] *Marrero*, 374 F.3d at 55.

[10] *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

[11] A copy is attached as Exhibit B to the new Ryan declaration [DI 113].

5

*Adequacy of Irish Forum*

*The Act*

As an initial matter, the only part of Rule 60(b) that even arguably might authorize relief based on plaintiffs' argument that the Act precludes suit against NAMA absent its consent is clause (6), which justifiably authorizes relief for any reason not specified elsewhere in Rule 60(b).[12] But plaintiffs did not make this argument in opposition to the defendants' *forum non conveniens* motion despite the facts that the Act, upon which they now rely, became law in 2009. The argument based upon it thus was as available to them in opposing that motion as it is now.[13] Whatever may be the outer limit of Rule 60(b)(6), it affords sufficient justification for granting relief based on an argument made for the first time following the entry of judgment, if ever, only where counsel's failure to raise the argument earlier was "so egregious and profound that [] [it] amount[ed] to the abandonment of the client's case altogether."[14] So we turn now to the Act, which demonstrates that

---

[12] The Flynns appear to suggest that *Crosbie* is "new evidence" under Rule 60(b)(2), but this argument is without merit for the reasons stated below. In brief, *Crosbie* neither contains information previously unavailable to plaintiffs nor merits any change in the Court's previous analysis.

[13] The plaintiffs previously argued in opposition to *forum non conveniens* dismissal only that Ireland was an inadequate forum because "(i) there is no provision in Irish Law which is analogous to the RICO statute, (ii) Irish law does not provide any civil right of action for criminal wrongs and (iii) several of the core counts in the First Amended Complaint, in particular wire fraud and mail fraud, do not exist at all in Irish law." DI 84 at 9; DI 86 at 20; DI 90 at 14.

[14] *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004); *see also Westport Ins. Corp. v. Goldberger & Dubin, P.C.*, 255 F. App'x 593, 595 (2d Cir. 2007) ("New arguments based on hindsight regarding how a movant would have preferred to have argued its case do not provide grounds for Rule 60(b) relief."); *In re Donald Sheldon & Co.*, Inc., 222 B.R. 690, 693 (S.D.N.Y. 1998) *aff'd*, 182 F.3d 899 (2d Cir. 1999) (Rule 60(b) not available as a mechanism for raising new arguments).

6

the belated argument entirely is frivolous. Counsel's failure to raise it earlier therefore was not tantamount to abandonment of plaintiffs' case.

Part 10, Chapter 2, of the Act applies to legal proceedings commenced after July 30, 2009 by a debtor, guarantor or others "in relation to a bank asset, or a participating institution in connection with a bank asset if the bank asset is specified . . . in an acquisition schedule."[15] Plaintiffs' papers assume that the plaintiffs' debts, initially to the Anglo Irish Bank and now to a NAMA affiliate, are "bank assets" within the meaning of the Act, and the Court proceeds on that basis. It likewise is undisputed, as this Court noted in *Flynn I*, that Irish law provides a panoply of remedies, albeit not a precise analogue to the U.S. RICO Act, for the wrongs alleged here by plaintiffs were plaintiffs to prove their case except to the extent, if any, that those remedies are precluded by the Act.

Plaintiffs claim first that the Act deprives the Irish courts of *any* jurisdiction with respect to claims against NAMA absent NAMA's consent.[16] But that assertion is insupportable. Indeed, the new declaration of plaintiffs' Irish law expert, a barrister, does not go so far. He contends only that the Act "*severely limits* the Irish Courts' jurisdiction in matters over NAMA. Essentially, unless NAMA consents to suit, private litigants such as the plaintiffs herein, are restricted from pursuing NAMA *by way of declarations or injunctions*, the effect of these sections of the Act is to restrict any claimants case to damages."[17] Thus, he concedes the availability of damages actions against NAMA. Moreover, he cites no authority for the characterization of the Act

---

[15] DI 113, Ex. A at 114.

[16] DI 114 at 4-5.

[17] DI 113 ¶ 5 (emphasis added).

as "severely limit[ing]" the availability of other remedies beyond a general references to each of the the Act and to *Crosbie*.

It bears mention at the outset that even if the barrister's characterization of the Act's provisions with respect to remedies other than damages were correct, it would not warrant the conclusion that Ireland is not an adequate alternative forum. As this Court pointed out in *Flynn I*, an alternative foreign forum that offers different and less favorable causes of action and remedies than would be available here is not for that reason inadequate. What matters for determining the adequacy of an alternate form is only whether "it permits litigation of the subject matter of the dispute."[18] There is no suggestion here that Ireland would not permit suit against NAMA, absent its consent, for damages for the wrongs alleged by plaintiffs. Thus, it would be an adequate forum in any case. But the Court does not rest on that point alone.

The Act, contrary to plaintiffs' assertion, does not require NAMA's consent as a prerequisite to an action against it even for declaratory relief or an injunction. Nor does it materially, let alone "severely[,] limit" the availability of such relief.

The relevant provisions of the Act in relation to injunctive and declaratory relief against NAMA may be summarized briefly. An application for injunctive or declaratory relief may be made only by leave of court, which may be sought *ex parte*.[19] In order to grant leave, the court must be satisfied "that the application raises a substantial issue for the court's determination," that the application either is timely or that there is sufficient reason for excusing tardiness, and that

---

[18] *Flynn I*, 2014 WL 3732926, at *5 (citations and internal quotation marks omitted).

[19] Act §§ 182(2)-(3), 183.

8

"damages would not be an adequate remedy" if the applicant were to prevail.[20] Assuming leave is granted and injunctive relief sought against NAMA on an interim basis, the court, in determining whether to grant such relief, "shall have regard . . . to the public interest," which includes the purposes of the Act and the importance of permitting NAMA to discharge its functions expeditiously and efficiently.[21] Finally, where the applicant would have a remedy in damages, injunctive relief is not to be given unless the court concludes that the applicant would suffer an injustice in its absence.[22]

The standards applicable in the United States are not much different. As the Supreme Court recently has reaffirmed:

> "a plaintiff seeking a permanent injunction [in a federal court in this country] must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[23]

---

[20] *Id.* §§ 182(4), (6).

[21] *Id.* §§ 192(1)-(2).

[22] *Id.* § 192(3).

[23] *eBay, Inc. v. MercExchange, Inc.*, 547 U.S. 388, 391 (2006).

The same standard governs preliminary injunctions save that a preliminary injunction applicant need show only an appropriate likelihood of success on the merits rather than demonstrate that it in fact will prevail. *See, e.g.*, *United States Sec. and Exch. Comm'n v. Citigroup Global Mkts. Inc.*, 752 F.3d 285, 296 (2d Cir. 2014) (standards on preliminary and permanent injunctions essentially the same); *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676, 684 (2d Cir. 2013) (preliminary injunction applicant must demonstrate "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor") (internal quotation marks and citations omitted), *rev'd on other grounds*

9

Moreover, "[w]here a party seeks a preliminary injunction that challenges government action taken in the public interest pursuant to a statutory or regulatory scheme and that would alter, rather than maintain, the status quo, the moving party must demonstrate irreparable harm and a clear or substantial likelihood of success on the merits."[24] Thus, injunctive relief against NAMA in an Irish court would be governed by a standard very close or identical to that which would apply were the same relief sought in this Court. The principal distinction is that an application for such relief against NAMA in Ireland may be made only if the applicant first obtains leave of court, which would not be required here. But that is a distinction without any or much apparent difference. The prerequisites to obtaining leave under the Act – the existence of a "substantial issue," the lack of an adequate remedy in damages, and timeliness of the application or a sufficient reason for any delay – would be necessary to obtain an injunction under U.S. law. The distinction therefore goes only to the stage of the process at which that showing must be made, not to the substance of the showing necessary to obtain an injunction. Ireland is an adequate alternative forum because "it permits litigation of the subject matter of the dispute," at the very least in an action for damages and, with leave of the court, permits injunctions against NAMA. Any minor differences in procedure and substantive standards between the United States and Ireland would be immaterial.

        Not only was the Court correct in determining that Ireland is an adequate alternate forum, nothing in plaintiffs' present papers undercuts its previous conclusion that the weight of the deference that should be given the plaintiffs' choice of forum is less than otherwise would be the

---

      *without consideration of the point sub nom. Am. Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014).

[24]       *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 185-86 (2d Cir. 2010) (internal quotation marks and citations omitted).

case because their choice of forum reflects forum shopping. For the reasons discussed in *Flynn I* and above, the Flynns had no need to seek out this forum because those found in Ireland are adequate. They sued here in some material part because they sought the perceived *in terrorem* effect on the defendants of a "racketeering" suit and the leverage that comes with exposing defendants to the risk of treble damages. The fact that the plaintiffs relied, in opposing the *forum non conveniens* motion, only on the argument that RICO would be unavailable to them in Ireland underscores the correctness of that conclusion. And their failure then to argue that the Act prevents suit or limits equitable relief against NAMA – the argument they make now – shows that the present argument is a *post hoc* attempt to justify their choice of forum on a ground that never occurred to them when they made that choice, a ground that in any case is baseless.

### *The Crosbie Decision*

The *Crosbie* decision is entirely consistent with – indeed, it confirms – exactly what has been said concerning the availability in Irish courts of injunctive and declaratory relief against NAMA.[25] Indeed, plaintiffs' papers cite nothing in the *Crosbie* decision as supporting the entirely baseless argument of their American counsel[26] or even their Irish barrister's more limited but nonetheless baseless characterization of the Act.[27]

---

[25] DI 113, Ex. B ¶¶ 17-20, 41-48.

[26] DI 114 at 2 (*i.e.*, that the Irish courts would lack jurisdiction over an action seeking injunctive or declaratory relief against NAMA absent NAMA's consent).

[27] DI 113 ¶ 5 (*i.e.*, that the Act "severely limits the Irish Courts' jurisdiction in matters over NAMA. Essentially, unless NAMA consents to suit, private litigants such as the plaintiffs herein, are restricted from pursuing NAMA by way of declarations or injunctions, the effect of these sections of the Act is to restrict any claimants case to damages.").

11

\* \* \*

In short, the plaintiffs are not entitled to relief under Rule 60(b)(6) on the ground that their counsel's failure to argue that Ireland is not an adequate alternative forum because the Act either (1) forbids suit against NAMA in Ireland absent NAMA's consent or (2) "severely limits" the availability of injunctive or declaratory relief. The failure to make those arguments in opposing defendants' *forum non conveniens* motion was not "so egregious and profound that [] [it] amount[ed] to the abandonment of the client's case altogether"[28] for the simple reason the arguments are baseless and entirely without merit.

### The Alleged Fraud

Plaintiffs next contend that relief should be granted under Rule 60 because the defendants filed "knowingly false jurisdictional evidence" in support of their *forum non conveniens* motion and "misled this court to believe that the Leona Flynn action in Ireland was somehow related to the instant matter, and indeed would provide a pathway to an expanded Irish litigation involving the issues herein."[29] But plaintiffs nowhere specify the "jurisdictional evidence" to which they refer, let alone show that any of it was false, knowingly or otherwise. One readily could stop there, but the breathtaking irresponsibility of the charge warrants more.

So far as "jurisdictional evidence" is concerned, the plaintiffs necessarily refer to the defendants' evidence that (1) John Flynn, Sr., is an Irish citizen, (2) Elaine, James, and John Flynn, Jr., all have Irish driving licenses that list their addresses and places of birth as Ireland, (3) Leona

---

[28] *Harris*, 367 F.3d at 81.

[29] DI 114 at 5-6; *see* DI 113 ¶ 8.

12

Flynn's passport indicates she resides in Ireland, and (4) court filings in Leona Flynn's Irish action claimed Irish residence on behalf of John Flynn, Sr., Leona Flynn, Elaine Flynn, and John Flynn, Jr.[30] Defendants' submitted no other evidence on that subject. And there are two points to be made about that evidence.

First, all of it was submitted in defendants' opening papers. Not one word of it was controverted by plaintiffs in responding to defendants' motion. Indeed, apart from the pejorative characterization, none of it is disputed now.

Second, all of it was supported by documentary evidence, the authenticity of none of which is questioned.

Thus, plaintiffs' claim that defendants submitted false evidence is preposterous. Indeed, if a charge of knowing falsity properly might be made in this case, it perhaps might be made with respect to these allegations by plaintiffs against the defendants.

Nor did defendants mislead the Court about the significance of Leona Flynn's Irish lawsuit against NAMA. They accurately stated that Leona Flynn had sued a NAMA affiliate in Ireland for "a declaration that she was not liable under one of the loans at issue in that case."[31] They pointed out that the Flynns there "have raised, among other things, a claim alleging entitlement to an indemnity of overcharged interest together with damages for alleged deceit and misfeasance in public office, *i.e.*, the same factual allegations raised in the [first amended complaint] in this action."[32] And they argued that plaintiffs in this case could address all of their claims in that Irish

---

[30] Smyth Decl [DI 47] ¶¶ 18-22 and Exs. C-H; *see also* Def. Mem. [DI 45] at 6-7.

[31] DI 45 at 30.

[32] *Id.*

action.[33]  In responding to defendants' motion, plaintiffs disputed none of this.[34]  Rather, they confined themselves, to the extent their submission was at all relevant to this point, to the argument that Ireland was not an adequate forum because it would not apply the RICO Act.[35]

Moreover, in granting the defendants' *forum non conveniens* dismissal, this Court did not conclude that plaintiffs' claims in this case could have been, or could be, inserted into the Leona Flynn suit in Ireland.  It held only that the plaintiffs' claims could have been, and still could be, brought in the Irish courts.[36]  It gave weight to the Leona Flynn case in Ireland only to the extent that the her election to sue there and her assertion in her statement of claim in that case that she is "a lady with a residence" in Dublin bear on the balance of convenience as between litigating in New York or in Ireland.  Thus, the question whether the claims of all of the plaintiffs could be asserted in the Leona Flynn action – as opposed to a new action or actions – is immaterial.[37]

---

[33] *Id.*

[34] Pl. Mem. [DI 86] at 20.

[35] *Id.*

[36] *Flynn I*, at *2, *4, *6.

[37] This makes it unnecessary to consider the claim by plaintiffs' Irish barrister, made for the first time in support of the motion for reconsideration, that the full panoply of plaintiffs' claims in this case could not be inserted into the Leona Flynn case in Dublin.  *See* Ryan Decl. [DI 113] ¶ 8.  The Court notes, however, that this contention is unsupported by reference to any Irish statute, rule, or case.  It is a bald assertion.

*The New Flynn Declaration*

Finally, John Flynn, Sr., has submitted a new declaration in support of the present motion in which he expands upon the alleged connections of his family with Florida, the alleged attenuation of their connections to Ireland, and the claimed inconvenience of litigating plaintiffs' claims in Dublin.[38] The short answer is that all of this information has been available to Mr. Flynn throughout this litigation. It is not newly discovered. If Mr. Flynn thought it important, he should have placed it before the Court on the original motion. Having failed to do so then, he will not be suffered to do so now. What former Chief Judge Mukasey said with respect to motions for reconsideration applies equally to motions under Rule 60: a party seeking "reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings."[39] And even if the Court were to consider the new Flynn declaration on the merits, it would not warrant a difference result.

In *Flynn I*, the Court remarked "(1) even John Flynn, Sr., and Leona Flynn have substantial connections to Ireland as well as to the United States and, in the case of Leona Flynn, has demonstrated the convenience to her of Irish litigation by commencing an action there against NAMA, [and] (2) the Irish connections of John Flynn, Jr., and Elaine Flynn appear to be at least as strong as their U.S. connections . . . ."[40] John Flynn, Sr.'s new declaration would not materially alter

---

[38] Flynn Decl. [DI 112].

[39] *de los Santos v. Fingerson*, 97 Civ. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998).

[40] 2014 WL 3732926, at *4.

those facts. It merely states that the elder Flynns' connections to Ireland have diminished over the past five years and that their children, John Jr. and Elaine, have business connections in the United States but not in Ireland.[41] These additional facts would move the needle somewhat in favor of added weight to the degree of deference due the plaintiffs' choice of forum and the evaluation of the private factors relevant to the *forum non conveniens* determination. But they would not move it sufficiently to yield a different result, particularly in light of the other compelling considerations that entered into the Court's analysis in *Flynn I*.[42]

*Conclusion*

In view of its transparent lack of merit, this motion properly could have been disposed of in a single word. The Court nonetheless has written to make clear that each and every argument made by plaintiffs has been considered with care and found wanting as well as to make the point that the filing of this motion was abusive.

Plaintiffs' motion for reconsideration [DI 97] is denied in all respects.

SO ORDERED.

Dated:   August 19, 2014

/s/ Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge

---

[41] DI 112 ¶¶ 3-7.

[42] *See* 2014 WL 3732926, at *3-*4.